UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Monroe Bernard Washington, | Case No. 22-cv-2277 (KMM/DJF) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Minnesota Dept. of Corrections' Supervisor Officials et al., | |
| Defendant. | |

Plaintiff Monroe Bernard Washington brings claims against two Minnesota Department of Corrections ("DOC") detention facilities and various DOC officials arising from alleged assaults and alleged religious discrimination during his incarceration. (*See generally* ECF No. 1.) This matter is before the Court on: (1) Defendants'[1] Motion to Dismiss (ECF No. 43); (2) Mr. Washington's Motion for Emergency Injunction (ECF No. 33); and (3) Mr. Washington's Sealed Motion Opposing Dismissing of Case (ECF No. 54). For the reasons given below, the Court recommends granting Defendants' Motion to Dismiss, Denying Mr. Washington's Motion Opposing Dismissing of Case,[2] and Denying his Motion for Emergency Injunction. The Court

---

[1] "Defendants", for purposes of the Motion to Dismiss, includes all named defendants other than Sgt. Hilleren. No proof of service on Sgt. Hilleren has been filed and Defendant Hilleren's waiver of service request was returned unexecuted (*see* ECF No. 36). The Court notes that, pursuant to the executed waivers of service (ECF No. 38), and as identified in Defendants' Motion to Dismiss (ECF No. 43), several of the Defendants' names are captioned incorrectly in the Complaint: "MCF-OPH" is Minnesota Correctional Facility-Oak Park Heights; "MCF-STW" is Minnesota Correctional Facility-Stillwater; "Lt. Hill" is Jason Hills; "Sgt. Lisoldy" is Glen Lisowy; "Andy Pudois" is Andy Dubois; "Lt. Spets" is David Spets; "Sgt. Oconnor" is Terra O'Connor; and "Lt. Jones" is Shane Jones. The Court construes the Complaint as naming these Defendants as correctly identified.

[2] Mr. Washington's Motion Opposing Dismissing of Case is more properly construed as a response to Defendants' Motion to Dismiss (*see* ECF No. 54).

1

further recommends dismissing Mr. Washington's claims against Defendant Sgt. Hilleren under Rule 4(m) of the Federal Rules of Civil Procedure for failure to effect timely service of the Summons.

I.   **Background**

A.   **Mr. Washington's Complaint**

Mr. Washington alleges that, on or about July 12, 2019, gang members assaulted him while he was incarcerated at MCF-OPH (ECF No. 1 at 2). He claims after the assault he spoke with supervisory officials and told them "contracts were being placed on individual-inmates by gang member, due to an illicit relationship between said gang member and a female officer" (*id.* at 2–3). He claims he was assaulted a second time on August 1, 2019[3] "by the same gang members" (*id.* at 3). He claims prison supervisory officials "knew and had prior knowledge" but did nothing to prevent the attack. (*Id.*) As a result of this attack, he suffered a massive concussion, along with lacerations and bruises inside his mouth. (*Id.*) Mr. Washington further contends prison officials transferred him to MCF-STW after the second attack "in an effort to keep [him] from filing grievances." (*Id.*)

Mr. Washington alleges Defendants and their supervisors repeatedly met his attempts to exhaust administrative remedies with silence and hostility as a means of retaliation. (*Id.*) This included false reports, harassment and destruction of personal property. (*Id.*) He claims he attempted to file a tort claim with the Minnesota Attorney's General Office in or around November 2020, but officials transferred him to a prison in Jessup, Maryland to prevent him from accessing the courts (*id.* at 3–4). He alleges the transfer was retaliatory and occurred after he shared

---

[3] The Complaint appears to say August 1, 2012, but given the context of the allegation, the Court assumes Plaintiff intended to write August 1, 2019.

knowledge with the Attorney's General Office and DOC Commissioner Paul Schnell concerning corruption of prison officials on every level of the Minnesota DOC (*id.* at 4, 5). Mr. Washington further alleges Defendants, acting under color of law, have failed to send him emails, faxes or any paper documents of his medical, schooling mental health, or life-threatening conditions. (*Id.*)

Next, Mr. Washington contends that since January 5, 2021, all Defendants have been put on notice that Mr. Washington is a registered minister in Minnesota and the sole owner of a federally-protected 501(c)(3) nonprofit organization. (*Id.*) He asserts Defendants have violated his right to practice and provide spiritual guidance to his community, preventing him from acting as a "mentor, counselor, spiritual guru" and withholding any and all resources from Mr. Washington to run his nonprofit business (*id.* at 4–5).

Mr. Washington also alleges a cellmate sexually harassed him during his incarceration in Jessup, Maryland (*id.* at 5). He says when he put prison officials at the Jessup facility on notice of the harassment they informed his cellmate, thus putting him in immediate danger and violating the Prison Rape Elimination Act ("PREA"). (*Id.*) On February 23, 2022, officials transferred Mr. Washington to North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, where he is presently incarcerated. (*Id.*) He complains that nothing was done to his cellmate and claims staff at NBCI were falsely informed he had assaulted a prison official (*id.* at 5–6). NBCI is a "supermax" facility, and Mr. Washington alleges the inmates there are violent and deemed unable to be around others but are nonetheless housed in double bunks (*id.* at 6). He claims an inmate stabbed him recently due to an official at NBCI purposely opening his cell door when it should have been inaccessible. (*Id.*) Mr. Washington alleges supervisory officials at NBCI were on notice there was a hit placed on his life before the stabbing, but they did nothing to stop it. (*Id.*) He

argues deliberate indifference on the part of Minnesota officials, in sending him to Maryland, "was in of itself, cruel and unusual punishment." (*Id.*)

Based on these allegations, Mr. Washington asserts claims against two Minnesota correctional facilities and several of their officials, each named in his or her individual capacity. It is unclear whether Mr. Washington also seeks to raise claims against the Defendants in their official capacities (*compare* ECF No. 1 at 1, "All named defendants are sued in their individual capacities," *with* ECF No. 1 at 6, requesting damages "for the assault, that MN officials neglected to take steps to prevent … and for the retaliation of all MN prison officials, and supervisory officials …"). Given this lack of clarity and noting that Defendants address potential official capacity claims in their Motion to Dismiss (*see* ECF No. 44 at 13-15), the Court assumes for purposes of this Motion that Mr. Washington asserts official capacity claims as well.

Mr. Washington's claims may be construed to include: (1) a retaliation claim under 42 U.S.C. § 1983; (2) a section 1983 claim alleging denial of access to the courts in violation of the First Amendment; (3) a section 1983 claim alleging his conditions of confinement at NBCI violate the Eighth Amendment; (4) a section 1983 claim alleging failure to protect; and (5) a claim alleging denial of the right to free exercise of religion under the First Amendment and the Religious Land use and Institutionalized Persons Act ("RLUIPA"). (*Id.* at 1–3, 6–7.) For relief, he seeks damages in the amount of $ 2,500,000. (*Id.* at 6–7.) The Complaint does not assert claims for declaratory or injunctive relief. (*Id.*)

**B.    Mr. Washington's Motion for an Emergency Injunction**

Mr. Washington filed his Motion for Emergency Injunction on May 1, 2023, approximately seven months after he initiated this lawsuit. (ECF No. 33.) In that motion, Mr. Washington seeks an order from the Court requiring Defendants to: (1) place him in administrative segregation; and

4

(2) transfer him back to Minnesota (ECF No. 33 at 1–2, 7). The basis for this request is that Defendants knowingly transferred him to "the most corrupt state in the union" as a means of retaliation and to prevent him from accessing the Courts (*id.* at 2–3). He also alleges—for the first time—that Defendants placed him in administrative segregation during his incarceration in Minnesota after he informed the Attorney General of an illicit relationship between a female officer and a gang member, and that they did so without following procedure or providing him with adequate notice. (*Id.* at 2–3.)

In response to Mr. Washington's motion, Defendants note that Minnesota is a party to the Interstate Corrections Compact ("ICC"), which allows the DOC to exchange individuals incarcerated in Minnesota facilities with those in other states when a corrections contract exists between Minnesota and the other state (ECF No. 40 at 3, citing ECF No. 41 ¶ 4). Defendants assert that prisoners are transferred to other states for a variety of reasons, including but not limited to: (1) custody classification reduction or increases; (2) disciplinary issues; (3) incompatibility with other incarcerated persons; (4) security concerns; (5) an incarcerated person's enrollment in, or change in, treatment or programming; and (6) medical needs. (ECF No. 41 ¶ 2.) They further contend the DOC transferred Mr. Washington from Minnesota to Maryland in December 2021 based on his lengthy disciplinary record, which included instances of him specifically targeting staff. (*Id.* ¶ 5.) The DOC deemed Mr. Washington's transfer to Maryland appropriate because he had never made a positive adjustment at any Minnesota facility. (*Id.* ¶ 6.) DOC Capacity Manager Tracy Hosking states that, to the best of her knowledge as of May 17, 2023, Mr. Washington had not submitted a formal request to the DOC to transfer him back to Minnesota. (*Id.* ¶ 6).

## II. Motion to Dismiss

### A. Legal Standards

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume all facts in the complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Because Mr. Washington is a pro se litigant, the Court must construe his Complaint liberally. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although pro se complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law. *Martin v. Aubuchon*, 623 F.3d 1282, 1286 (8th Cir. 1980).

Rule 8(a)(2) of the Federal Rules of Civil Procedure states that a complaint must include "a short plain statement of the claim showing the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Federal Rule of Civil Procedure 11(b) places additional requirements on pleadings filed either by "an attorney or unrepresented party." Fed. R. Civ. P. 11(b). Any party who files "a pleading, written motion, or other paper … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at 11(b)(3). Taken together, "[i]t is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Gurman v. Metro Hous. Dev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

For these reasons, "[t]his Court has repeatedly criticized the filing of 'kitchen-sink' or 'shotgun' style complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Id.* at 1153 (collecting cases). Such complaints shift "onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support." *Id.* Most problematically for plaintiffs filing

7

'kitchen-sink' complaints, it becomes nearly impossible for the court to discern whether the plaintiff states a viable claim for relief because the allegations become "wreathed in a halo of frivolous and near-frivolous legal claims. The bad obscures the good." *Id.* at 1154.

### B. Analysis

Defendants seek to dismiss Mr. Washington's Complaint in its entirety and oppose his Motion for an Emergency Injunction on the grounds that the Complaint fails to state claims for relief, it fails to adequately allege the personal involvement of any individual Defendant, and it fails to comply with the Rule 8(a) pleading requirements. For the reasons given below, the Court recommends granting Defendants' motion and dismissing Mr. Washington's Complaint.

#### 1. Eleventh Amendment Immunity

To the extent Mr. Washington seeks to bring claims against Defendants in their official capacities, such claims are barred by the Eleventh Amendment. The doctrine of sovereign immunity is derived from the Eleventh Amendment, and "prohibits an individual from suing a state, regardless of the relief sought, unless the state consents to suit or Congress abrogates state immunity." *Hussein v. Minnesota*, 19-cv-1913 (DSD/TNL), 2019 WL 5693733, at *1 (D. Minn. Nov. 4, 2019) (citing U.S. Const. Amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 54–56 (1996); *Klingler v. Dep't of Revenue*, 455 F.3d 888, 893 (8th Cir. 2006)), *aff'd*, (8th Cir. Jan. 21, 2020)). Because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents[,]" the Eleventh Amendment bars claims seeking damages from state officials sued in their official capacities. *Kentucky v. Graham*, 437 U.S. 159, 169 (1985). When a party brings such claims, the Court lacks subject matter jurisdiction over the matter. *E.g.*, *Hummel v. Minnesota Dep't of Agric.*, 430 F. Supp. 3d 581, 587 (D. Minn. 2020).

An exception to this rule is derived from *Ex Parte Young*, 209 U.S. 123 (1908), which dictates that courts have subject matter jurisdiction over official capacity claims against state officials seeking prospective declaratory or injunctive relief. That exception does not apply here. Each of Mr. Washington's claim is a claim for damages under 42 U.S.C. section 1983. , Congress has not abrogated the states' immunity under section 1983, and the State has not waived its immunity. The Court accordingly recommends dismissing any official capacity claims Mr. Washington may have intended to bring for lack of jurisdiction.

### 2. Retaliation

To state a claim for retaliation, Mr. Washington must adequately plead that: (1) he exercised a constitutionally protected right; (2) Defendants disciplined him; and (3) exercising his constitutional right was Defendants' motivation for the discipline. *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (citing *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir.2007)). This requires Mr. Washington to plead sufficient facts "upon which retaliatory animus could be inferred." *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (rejecting a speculative and conclusory retaliation claim) (citing *Murphy v. Lane*, 833 F.2d 106, 108–09 & n.1 (7th Cir.1987) (per curiam)).

Because Mr. Washington asserts a section 1983 claim against the Defendants in their individual capacities, he must allege facts sufficient to establish that each Defendant is causally linked to, and directly responsible for, the deprivation of his rights occurring as the result of the alleged retaliation. *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citing *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir.2006)). He "must show each individual [D]efendant's personal involvement in [each] alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (citations omitted). Moreover, since respondent superior liability is not

available under section 1983, it is not enough for Mr. Washington to allege only that a Defendant held a supervisory position. Rather, Mr. Washington must allege facts sufficient to allow for an inference that the Defendant was "deliberat[ly] indifference to or tacit[ly] authorized" the "violative practices." *Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019) (citing *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010)). Courts have "refused to find retaliation where a prisoner fails to present evidence showing the particular defendant who is alleged to have taken the retaliatory action was aware of, or was affected by the prisoner's earlier constitutionally protected activity from which retaliatory animus could be inferred." *Smith v. Iverson*, 8:19-cv-298, 2019 WL 4417548 (D. Neb. Sept. 16, 2019); *see also, e.g.*, *Antonelli v. Tipton*, 08-3123, 356 F. App'x. 903, 904 (8th Cir. Dec. 16, 2009) (per curiam) (plaintiff "failed to state a retaliation claim because he … failed to allege which defendants were involved in or affected by his grievances.")

Mr. Washington fails to identify any particular Defendant connected to or affected by a grievance in connection with his transfer to Maryland, and he does not plead any other facts suggesting any particular Defendant had a retaliatory motive for transferring him. *See Antonelli*, 356 F. Supp. at 904. Mr. Washington runs into the same problem with respect to his other allegations of retaliation. He alleges his attempts to exhaust administrative remedies were met with silence and hostility by "all named defendants and their supervisors out of retaliation" through false reports, harassment, and destruction of his personal property. (ECF No. 1 at 3.) He also alleges the DOC transferred him to Maryland because he attempted to file a complaint with the Attorney General's Office after he reported the levels of "corruption by prison officials on every level within the MN Dept. of Corrections." (ECF No. 1 at 4.) But these allegations do not provide any information regarding whether any named Defendant was aware of, or implicated by, Mr.

10

Washington's alleged grievances and complaint to the Attorney General or explain how any of them participated in these alleged instances of retaliation. He therefore fails to adequately plead the personal involvement of any Defendant.

Moreover, Mr. Washington more generally fails to state a claim for relief. Mr. Washington broadly and vaguely asserts he was transferred to MCF-STW to keep him from filing grievances. (ECF No. 1 at 3.) But he does not actually identify any grievance he sought—but was unable—to file or assert that he was somehow prohibited from filing grievances during his incarceration at MCF-STW. He also fails to specify which retaliatory reports allegedly were false or identify what personal property purportedly was destroyed. And because he has not identified any particular Defendant who retaliated against him, his allegations fall far short of stating any claims from which the Court might be able to infer the retaliatory animus necessary to state a retaliation claim. *See Atkinson*, 91 F.3d at 1129; *Gurman*, 842 F. Supp. 2d at 1153. The Court recommends dismissing this claim under Rules 12(b)(6) and 8(a) for these reasons.

### 3. Denial of Access to the Courts

"Inmates undeniably enjoy a constitutional right to access the courts and the legal system." *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). To protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail their complaints and related legal correspondence once prepared. *Id.* (citations omitted). But a prisoner lacks standing to bring an access-to-the-courts claim unless he can identify an "actual injury." *Lewis*, 518 U.S. at 349. "Thus, an inmate cannot bring an access-to-the-courts claim unless he pleads, (and ultimately proves), that he has been deprived of some specific opportunity to defend himself, or advance a viable legal claim, in some particular action." *Id.* at 351.

11

Mr. Washington's Complaint is vague and difficult to interpret, but it appears his access-to-the-courts claim is predicated on his general assertion that Minnesota prison officials are "hindering his access to the Courts" and that the State of Maryland at one point withheld his legal mail. (ECF Nos. 3, 6–7.) Mr. Washington does not identify any court proceeding or action in which he was prevented from participating or point to any specific legal mail he was unable to send or receive. Nor does he allege—even generally—that this alleged deprivation injured him in any way. Because Mr. Washington does not allege an actual injury resulting from Defendants' conduct, his access-to-the-courts claim fails under Rule 12(b)(6). And because the Complaint does not contain facts with enough specificity "to raise a right to relief above the speculative level," and seeks to accuse all Defendants without explaining what any of them did to deprive him of his right-of-access, it also fails under Rule 8(a). This claim should be dismissed accordingly.

### 4. Conditions of Confinement

To state an Eighth Amendment claim alleging conditions of confinement amounting to cruel and unusual punishment, a prisoner must plead facts sufficient to establish his conditions of confinement involve a wanton and unnecessary infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Eighth Amendment violations require both objectively harsh conditions of confinement and a subjectively culpable state of mind on the part of prison officials in creating or condoning those conditions." *Martin v. Byrd*, 4:07-CV-01184 (SWW), 2008 WL 686936, at *3 (E.D. Ark. Mar. 10, 2008). To state a claim for relief on this ground, Mr. Washington first must prove that his conditions of confinement amounted to "the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (8th Cir. 1996) (quoting *Rhodes*, 425 U.S. at 347). He then must prove that the prison officials whose actions he challenges had a sufficiently

culpable state of mind and that they "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Id.* at 842.

Mr. Washington alleges that because NBCI is a "supermax" facility that houses dangerous and violent individuals in double bunks, Defendants inflicted cruel and unusual punishment on him by causing him to be transferred there. But double-bunking in facilities that house detainees deemed to be dangerous constitutes a "legitimate nonpunitive governmental objective" for effectively utilizing limited space. *See Karsjens v. Harpstead*, 74 F.4th 561, 571 (8th Cir. 2023). The practice of double-bunking inmates in a supermax facility, without more, does not constitute cruel and unusual punishment. Mr. Washington moreover does not allege—at all—that any official from Minnesota knew of conditions or risks at NBCI that presented a substantial risk of harm to him, and his allegations do not support such an inference. Mr. Washington further fails to identify any condition of his confinement in Minnesota facilities that might be construed as objectively harsh. The Court recommends dismissal of this claim for these reasons.

### 5. Failure to Protect

To establish a failure-to-protect claim under the Eighth Amendment, a detainee must show that the defendant "was deliberately indifferent to a 'substantial risk of serious harm'" to the detainee. *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). "In doing so, a [plaintiff] must satisfy two requirements, one objective and one subjective. The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious; i.e., whether the inmate 'is incarcerated under conditions posing a substantial risk of serious harm.'" *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 824). "The second requirement is subjective and requires that the inmate

13

prove that the [state] official had a 'sufficiently culpable state of mind.'" *Whitson*, 602 F.3d at 923 (quoting *Farmer*, 511 U.S. at 834).

Plaintiff's Complaint may be construed as alleging a failure-to-protect claim against Minnesota DOC officials for intentionally transferring him to Maryland. (*See* ECF No. 44 at 9–10.) To the extent Mr. Washington intends to raise such a claim, it should be dismissed on the ground that he does not proffer any allegation asserting that any particular Defendant in this action had knowledge of any risks of harm he would face in Maryland and nevertheless deliberately disregarded those risks. Mr. Washington claims he was stabbed by an inmate at the NBCI after a prison guard improperly left a door open. (ECF No. 1 at 6.) While this allegation might support a claim for relief against that prison guard for failure to protect Mr. Washington, it does not support his claims against officials in Minnesota, who are uninvolved in the operations of NBCI and would have no reason to know about the prison guard's conduct. Mr. Washington fails to assert that any Defendant had a culpable state of mind with respect to any potential risk of harm to him in Maryland's facilities.

Mr. Washington also claims Defendants did nothing to protect him after the alleged July 12, 2019 attack at MCF-OPH, and that this failure resulted in him receiving injuries from a second beating on August 1, 2019. (ECF No. 1 at 2–3.) Though this claim is somewhat closer to the mark, it still fails to allege the personal involvement of any Defendant in the violation of his rights. Mr. Washington alleges that: (1) he was assaulted on July 12, 2019 by a gang member and spoke to "supervisor officials" about contracts being placed on his head because a gang member had an illicit relationship with a female prison guard; (2) he experienced a second assault on August 1, 2019; and (3) "prison supervisor officials knew or had prior knowledge and did nothing to prevent the attack." (*Id.*) He does not name the gang member or members who allegedly assaulted him or

14

identify the prison guard purportedly involved in the improper relationship. He further fails to identify the "supervisor officials" he claims to have notified of the first attack or state when or how he provided such notification. This is the kind of conclusory "the-defendant-unlawfully-harmed-me" accusation precluded under *Iqbal*. 556 U.S. at 678. It does not raise a right to relief above the speculative level or create a reasonable inference that any of the named Defendants was on notice that Mr. Washington faced a substantial risk of harm. *See id.* at 555, 678; *White*, 865 F.3d at 1081. This claim should be dismissed because it fails to satisfy the pleading requirements under Rule 8(a).

### 6. The RLUIPA and Free Exercise of Religion

Under the RLUIPA:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

To state a claim for relief under this statute, a prisoner first must show "that there is a substantial burden on his ability to exercise his religion." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (citing 42 U.S.C. § 2000cc–2(b)). To constitute a "substantial burden," the government policy or action at issue must: (1) significantly constrain conduct or expression that manifests some central tenant of the prisoner's individual religious beliefs; (2) meaningfully curtail the prisoner's ability to adhere to his faith; or (3) deny the prisoner a

reasonable opportunity to engage in activities that are fundamental to his religion. *Id.* (quoting *Weir v. Nix*, 114 F.3d 817 (8th Cir. 1997)).

Mr. Washington argues that Defendants violated the RLUIPA because he is a registered minister and that, due to his incarceration, he is unable to provide spiritual guidance to his community. (ECF No. 1 at 5, arguing that Defendants have impeded his ability to "provide spiritual guidance for his community.") To the extent Mr. Washington alleges generally that his incarceration status alone unduly burdens his ability preach and practice his faith, this claim lacks merit. By requiring that a prisoner plaintiff must plead a "substantial burden" on his ability to practice his faith, the RLUIPA presumes that incarceration may burden a prisoner's ability to practice his religion. The general burden that incarceration itself necessarily imposes on a prisoner's ability to practice his faith is not unlawful,[4] and the RLUIPA recognizes that a prisoner's right to practice his religion must be balanced against the need to maintain order in the prison environment. *See Murphy*, 372 F.3d at 988; *see also Fowler v. Crawford*, 534 F.3d 931, 937 (8th Cir. 2008) (noting that Courts must apply RLUIPA with "deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline) (citation and quotation omitted).

To the extent Mr. Washington seeks to challenge some DOC policy or practice that allegedly limited his right to communicate his faith to others, his claims are too vaguely worded for the Court to discern what policy or practice he is challenging, or why. His conclusory allegations that Defendants violated his right to practice by limiting his access, privileges, and available resources (*see* ECF No. 1 at 5), are not sufficient to state a claim for relief. *See Williams*

---

[4] To hold otherwise would mean that anyone convicted of a crime could demand a get-out-of-jail free card simply by claiming a desire to attend services at a community church.

16

*v. City of St. Louis*, 626 Fed. App'x 197, 198-99 (8th Cir. 2015) (per curiam) (holding that an RLUIPA claim failed when the plaintiff "made only a conclusory allegation that he was denied a religious diet"). Mr. Washington therefore fails to state a claim for relief under RLUIPA, and the Court recommends dismissing Mr. Washington's free exercise claims for the same reasons.

### 7. Due Process

In his Motion for an Emergency Injunction, Mr. Washington contends that Defendants placed him in administrative segregation during his incarceration in Minnesota after he informed the Attorney General of an illicit relationship between a female officer and a gang member, and that they did so without following procedure or providing him with adequate notice. (*Id.* at 2–3.) This claim can be construed liberally as alleging a violation of his procedural due process rights under the Fourteenth Amendment. But these allegations did not appear for the first time until Mr. Washington filed his Motion for an Emergency Injunction. Because he did not assert them in his Complaint and did not make any motion seeking to amend his Complaint to add them, they are not properly pled and the Court declines to consider them.[5]

### III. Motions Opposing Dismissing of Case and for an Emergency Injunction

Mr. Washington's Motion Opposing Dismissing of Case is, for all intents and purposes, merely a response to the Defendants' Motion to Dismiss. Because the Court recommends dismissing the Complaint, the Court also recommends denying that motion on the same grounds. And because the Court recommends denying Mr. Washington's retaliation and access to the courts claims, it further recommends denying his Motion for Emergency Injunction, which is predicated

---

[5] The Court further notes that this claim suffers from the same defects plaguing the rest of his claims: he has not identified any policy or procedure Defendants purportedly violated when they placed him in administrative segregation, alleged facts suggesting he attempted to grieve this action and was deprived an opportunity to do so, or identified any Defendant who was involved.

on those claims, as moot. *See, e.g.*, *Vient v. Wehco Media, Inc.*, No. 4:20-cv-01219 (KGB), 2021 WL 4037576, at *3 (E.D. Ark. Sept. 3, 2021) (granting a motion to dismiss and denying plaintiff's motion for preliminary injunction as moot, *reconsideration denied*, 2022 WL 4133431 (E.D. Ark. Sept. 12, 2022)).

### IV. Claims Against Defendant "Sgt. Hilleren"

Counsel has appeared in this case on behalf of all named defendants other than the defendant identified as "Sgt. Hilleren." (*See* ECF No. 37 at 1, n.2, stating that counsel did not appear for "Sgt. Hilleren" because the DOC is unable to identify this defendant.) All remaining defendants either have been served or have waived service of process. No proof of service on Sgt. Hilleren has been filed and this defendant's waiver of service request was returned unexecuted (*see* ECF No. 36). Since more than 90 days have elapsed since Mr. Washington initiated this action (*see* ECF No. 1), and he has not shown good cause for his failure to effect timely service on St. Hilleren, the Court recommends dismissing the claims against this defendant under Rule 4(m) of the Federal Rules of Civil Procedure.

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (ECF No. 43) be **GRANTED** and Plaintiff's Sealed Motion Opposing Dismissing of Case (ECF No. [54]) be **DENIED**;

2. The claims against all Defendants other than Sgt. Hilleren be **DISMISSED WITH PREJUDICE**;

3. The claims against Defendant Sgt. Hilleren be **DISMISSED WITHOUT PREJUDICE** under Federal Rule of Civil Procedure 4(m); and

4. Plaintiff's Motion for Emergency Injunction (ECF No. [33]) be **DENIED**.

Dated: December 15, 2022          *s/ Dulce J. Foster*
                                  Dulce J. Foster
                                  United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).